[Cite as *State ex rel. Haller v. Ohio Dept. of Pub. Safety*, 2015-Ohio-3778.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Thomas W. Haller, | : | |
| Relator, | : | |
| v. | : | No. 13AP-975 |
| Ohio Department of Public Safety, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

D E C I S I O N

Rendered on September 17, 2015

*Mowery Youell & Galeano, Ltd.,* and *Merl H. Wayman,* for relator.

*Michael DeWine*, Attorney General, *Matthew J. Karam* and *Joseph N. Rosenthal,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Thomas W. Haller, commenced this original action in mandamus seeking an order compelling respondent, Ohio Department of Public Safety, to reinstate him to his previous position of administrative officer 2 effective May 4, 2007, the date that respondent revoked his unclassified appointment to an administrative officer 3 position, pursuant to the fallback provision set forth in R.C. 124.11(D).

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that relator's claim under R.C. 124.11(D) is barred by the six-year statute of limitations

contained in R.C. 2305.07.  Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3}  Relator has filed objections to the magistrate's decision.  In his first objection, relator argues that the magistrate erred in finding that relator's complaint in mandamus is barred by the six-year statute of limitations contained in R.C. 2305.07.  In support of this objection, relator argues that the six-year statute of limitations in R.C. 2305.07 does not apply to a claim for fallback rights under R.C. 124.11(D) because:  (1) the statutes are not cross-referenced; (2) the two statutes address different subject areas; and (3) the Supreme Court of Ohio in *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432 held that fallback rights can be exercised at any time after appointment to the unclassified position.  We find relator's arguments unpersuasive.

{¶ 4}  First, relator cites no authority for the proposition that the statute of limitations contained in R.C. 2305.07 applies only to those statutes that are specifically referenced or to those statutes that address the same subject areas.  There is no language in R.C. 2305.07 that supports the limitations argued by relator.  Other than identifying two statutes that are excepted from its provisions, R.C. 2305.07 does not reference any specific statutes.  By its express terms, it applies a six-year statute of limitations to "an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty."  The right relied upon by relator here is created by statute.  We also note that the Supreme Court of Ohio has applied R.C. 2305.07 to other rights of public sector employees created by statute.  *See State ex rel. N. Olmsted Fire Fighters Assn. v. N. Olmsted*, 64 Ohio St.3d 530 (1992); and *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Edn.*, 42 Ohio St.3d 86 (1989).  For these reasons, we agree with the magistrate that R.C. 2305.07 applies to relator's statutory claim.

{¶ 5}  We also reject relator's reliance upon *Asti* to support its contention that a claim based upon R.C. 124.11(D) can be filed at any time–effectively nullifying any statute of limitations.  As noted by respondent, R.C. 124.11(D) was amended after the version of the statute interpreted by *Asti*, to expressly limit when a public sector employee can assert fallback rights under R.C. 124.11(D).  The amended statutory language applicable here clearly indicates when a right under the statute arises.  Therefore, *Asti* is not controlling.

{¶ 6}   For these reasons, we overrule relator's first objection.

{¶ 7}   In its second objection, relator contends that the magistrate erred by not addressing the merits of relator's R.C. 124.11(D) claim.   Because we find that the magistrate correctly applied the six-year statute of limitations in R.C. 2305.07 to bar relator's statutory claim, the magistrate did not err when he found it unnecessary to address the merits of relator's claim.   Therefore, we overrule relator's second objection.

{¶ 8}   Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.   Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.   In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

TYACK and HORTON, JJ., concur.

_____

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Thomas W. Haller, | : | |
| Relator, | : | |
| v. | : | No. 13AP-975 |
| Ohio Department of Public Safety, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on June 3, 2015

---

*Mowery Youell & Galeano, Ltd.,* and *Merl H. Wayman,* for relator.

*Michael DeWine*, Attorney General, *Matthew J. Karam* and *Joseph N. Rosenthal,* for respondent.

---

### IN MANDAMUS

{¶ 9} In this original action, relator, Thomas W. Haller, requests a writ of mandamus ordering respondent, Ohio Department of Public Safety ("ODPS" or "respondent"), to reinstate him to his previous position of administrative officer 2 effective May 4, 2007, the date that respondent revoked his unclassified appointment to an administrative officer 3 position. Relator claims a clear legal right to reinstatement to the administrative officer 2 position under the so-called fall-back provision set forth at R.C. 124.11(D).

Findings of Fact:

{¶ 10} 1. In August 1988, relator was first hired by respondent to the position of "Driver License Examiner 1."

{¶ 11} 2. In March 1996, relator was promoted to the position of "License Station Supervisor 5."

{¶ 12} 3. In May 1997, relator was promoted to the position of "License Exam Supervisor 4."

{¶ 13} 4. Effective July 16, 2000, relator was promoted to the position of "Administrative Officer 2."  On a "Personnel Action" form executed by the appointing authority, it is indicated that the previous position was class No. 24336 and its status was "C."  It is further indicated that the administrative officer 2 position is class No. 63132 and its status is "P."

{¶ 14} There is no key on the document to indicate the meaning of status "P" and status "C."

{¶ 15} According to his deposition testimony of May 21, 2014 taken in this action, relator's acceptance of the administrative officer 2 position required him to move to Columbus, Ohio where he was "State Manager for driver license examinations." According to relator, "I ran the driver examinations for the 88 counties."

{¶ 16} 5. In January 2002, relator applied for the position of "Administrative Officer 3."  Respondent promoted relator to that position effective January 13, 2002.  On the "Personnel Action" form completed by the appointing authority, the administrative officer 2 position is stated to be class No. 63132 and status "P."  The administrative officer 3 position is stated to be class No. 63133 and status "U."  There is no key on the form to indicate the meaning of status "P" and status "U."

{¶ 17} 6. According to his deposition testimony, prior to his acceptance of the administrative officer 3 position, relator consulted with respondent's Director of Human Resources John Demaree:

> Q. And how did you learn that your civil service classification had changed?
>
> A. I did the homework before I interviewed for the job to see classified to unclassified.

\* \* \*

A. I asked him if I was correct, if I had fallback rights. He explained the classified and unclassified positions and he explained that I have fallback rights. I would not have interviewed for the position had I not had fallback rights.

Q. What was your understanding of what it meant to have fallback rights?

A. I was told that moving from a classified position to an unclassified position you would have fallback rights. Moving from an unclassified to an unclassified you lost those fallback rights.

{¶ 18} 7. Prior to his acceptance of the administrative officer 3 position, relator was asked to sign a letter dated January 9, 2002 addressed to the director of state personnel services. The letter states:

I hereby acknowledge that my appointment to the position of Administrative Officer 3 (PCN: 9574.0) is governed by the unclassified civil service per Section 124.11(A)(9) of the Ohio Revised Code and I will serve at the pleasure of the appointing authority.

{¶ 19} 8. By letter dated May 10, 2004 to the registrar of the Bureau of Motor Vehicles, respondent's assistant registrar, Terry Metcalf, recommended a "desk change" such that relator would be moved from the position of "Administrator — Central Operations" to "Administrator — Field Operations."

{¶ 20} 9. According to relator's answer to an interrogatory filed in this action, Metcalf informed relator that the desk change would not effect his fall-back rights.

{¶ 21} 10. In August 2004, relator was officially appointed to the position of administrator of field operations. That month, he was given the job title of "Deputy Director 5" on a temporary work level ("TWL") covering the period July 25, 2004 to October 30, 2004.

{¶ 22} 11. Effective November 13, 2004, respondent extended relator's TWL period from October 31 to November 13, 2004.

{¶ 23} 12. On November 14, 2004, relator's TWL period ended. Relator returned to his previous position as administrative officer 3.

{¶ 24} 13. In November 2006, Ted Strickland was elected Governor of Ohio. Thereafter, Strickland appointed Henry Guzman to be his director of ODPS.

{¶ 25} 14. According to relator's deposition testimony, prior to the November 2006 election, relator had a conversation with Richard ("Rich") Nagel who was then respondent's manager for human resources:

> Q. And tell me about your conversation with Rich Nagel at the time.
>
> A. I just wanted to confirm that I had the fallback rights, that going from an unclassified job I had fallback rights to the classified position. And at that time Rich did some homework. He didn't answer me when I asked him. He said I'll look in to it. He went back and looked into it. He brought me a copy of the law and said that I did not have fallback rights.
>
> Q. And approximately when did you have this conversation with him?
>
> A. Well, it was prior to the November election, October, maybe, September, October. It was prior to the election because all of us could see that Governor Strickland was going to win.

{¶ 26} 15. According to his deposition testimony, on May 4, 2007, relator was called to the office of the Registrar, Mike Rankin, for a meeting. At the meeting, respondent's assistant director, Rich Barga, handed relator a letter dated Friday, May 4, 2007 signed by Guzman. The letter states:

> Pursuant to the authority granted in Ohio Revised Code 124.11(A)(9) and Ohio Administrative Code 123:1-47-01(A)(87), this letter is to advise you that your unclassified appointment of Administrator of Field Operations for the Bureau of Motor Vehicles, within the Department of Public Safety, is being revoked. This action will be effective at the close of business on Friday, May 4th.
>
> Please contact Rich Nagel at (614) 466-4570 to make arrangements for the return of state issued equipment, to retrieve any personal items from the work place, regarding any matters concerning your paycheck, and any related questions.

{¶ 27} 16. According to his deposition testimony, following the May 4, 2007 termination meeting, relator returned to his office:

> I went back to my office and started cleaning it out. Rich Nagel came to my office. He walked in and I was sitting behind my desk. He walked in and I just said like no fallback rights. And he just shook his head and said, I'm sorry, I hate doing this. It's not something I want to do. And I just said to him, it's okay, Rich, we'll get through it. We went through it. Rich took my telephone, my computer, my badge, all the things that belong to the Department of Public Safety.

{¶ 28} 17. Between May 4, 2007 and August 18, 2011, relator obtained temporary employment with the United States Department of Homeland Security on three occasions. In 2008, he was paid a total of $4,145. In 2009, he was paid a total of $18,170. In 2011, he was paid a total of $4,280.

{¶ 29} 18. In August 2011, relator completed an "Ohio Civil Service Application" form. Effective October 3, 2011, respondent rehired relator to the position of administrative officer 3, the position he had held on the date of his termination on May 4, 2007.

{¶ 30} 19. In his deposition testimony, relator states that he has calculated his lost wages during the period May 4, 2007 to September 2011 to be $449,269.12.

{¶ 31} 20. On November 18, 2013, relator, Thomas W. Haller, filed this original action against respondent.

Conclusions of Law:

{¶ 32} It is the magistrate's decision that this court deny relator's request for a writ of mandamus on grounds that relator failed to bring this action within six years after the cause accrued as required by the applicable statute of limitations, i.e., R.C. 2305.07.

{¶ 33} R.C. 2305.07 provides:

> [A]n action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued.

{¶ 34} This action involves the so-called fall-back rights set forth at R.C. 124.11(D). That statute was amended by H.B. No. 530 effective June 30, 2006. It stated then and on

May 4, 2007, the date respondent revoked relator's unclassified appointment to an administrative officer 3 position:

> An appointing authority whose employees are paid directly by warrant of the director of budget and management may appoint a person who holds a certified position in the classified service within the appointing authority's agency to a position in the unclassified service within that agency. A person appointed pursuant to this division to a position in the unclassified service shall retain the right to resume the position and status held by the person in the classified service immediately prior to the person's appointment to the position in the unclassified service, regardless of the number of positions the person held in the unclassified service. *An employee's right to resume a position in the classified service may only be exercised when an appointing authority demotes the employee to a pay range lower than the employee's current pay range or revokes the employee's appointment to the unclassified service.*

(Emphasis added.)

{¶ 35} The italicized words as quoted above were added to the statute by H.B. No. 530.

{¶ 36} Here, respondent argues that the R.C. 2305.07 six-year statute of limitations applies to a liability created by R.C. 124.11(D)'s provision for fall-back rights. To support the argument, respondent points to *State ex rel. N. Olmstead Fire Fighters Assn., Local 1267 of the Internatl. Assn. of Fire Fighters v. N. Olmstead,* 64 Ohio St.3d 530 (1992).

{¶ 37} In *N. Olmstead,* the court held that R.C. 2305.07 limits the actionability of claims brought under R.C. 9.44, which requires a current public employer to treat qualifying prior state service as if it were service with that employer, such that the value of the service, if any, is determined by the current employer's vacation leave policy. That is, the court held that R.C. 2305.07 limits the actionability of R.C. 9.44 claims regarding the crediting of vacation leave. According to respondent, R.C. 124.11(D) similarly creates a liability upon respondent to place an employee removed from an unclassified position to his last classified position if he is entitled to fall-back rights.

{¶ 38} Based on the above analysis, respondent concludes that relator was required to file this mandamus action within six years of when he was allegedly denied fall-back

rights on May 4, 2007. Because relator failed to bring this mandamus action within six years of his May 4, 2007 removal, respondent concludes that this action is barred under R.C. 2305.07.

{¶ 39} Relator counters in his reply brief that, in *N. Olmstead,* even though the court found that R.C. 2305.07 limits the actionability of R.C. 9.44 claims under the circumstances there, R.C. 2305.07 did not bar recovery for the six years prior to the filing of the complaint. Thus, recovery was only partially barred by R.C. 2305.07 in the *N. Olmstead* case.

{¶ 40} Applying that analysis here, because relator filed his complaint on November 18, 2013, recovery for lost wages would not be barred for the period November 18, 2007 to October 3, 2011, when relator returned to employment with respondent. That is, R.C. 2305.07 would bar recovery for the period May 4, 2007 to November 18, 2007.

{¶ 41} The magistrate disagrees with relator's analysis and relator's application of the *N. Olmstead* case to his situation here. The magistrate finds that R.C. 2305.07 completely bars recovery for all lost wages beginning May 4, 2007, the date of relator's termination.

{¶ 42} The issue here requires further review of the *N. Olmstead* case and the decision of the Supreme Court of Ohio in *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Edn.,* 42 Ohio St.3d 86 (1989). The *N. Olmstead* court premised its decision in large part upon the *Madden* case. Accordingly, review begins with the *Madden* case.

## The *Madden* Case

{¶ 43} Carol Madden was certified to teach in the public schools of Ohio. Respondent Windham Exempted Village School District Board of Education ("Windham") first hired Madden for the 1968-69 school year. Prior to school year 1968-69, Madden had taught as a substitute teacher in another school district for 105 days.

{¶ 44} Windham compensates its certified teachers based on salary schedules it has adopted. These schedules have columns relating to academic experience and within each column there are "steps" or levels which correspond to years of service. A newly hired teacher, for example, normally would be placed at step zero for the first year of

teaching.  This teacher would then move up to step one after the first year of teaching of 120 days and would continue to advance with each year of service.

{¶ 45} When first hired by Windham for school year 1968-69, Madden was credited with one year of service for substitute teaching of 105 days during school year 1967-68.  Hence, Madden was placed at step one of the salary schedule for the school year 1968-69.

{¶ 46} Madden was re-employed by Windham for school years 1969-70 and 1970-71.  Madden resigned her teaching position during school year 1970-71, effective March 12, 1971, for maternity reasons.  Prior to March 12th, Madden had worked more than 120 days during that school year.

{¶ 47} Madden was not employed as a teacher for school years 1971-72 through 1978-79, but was re-employed by Windham for school year 1979-80.  Upon her re-employment, Madden was placed at step three of the salary schedule instead of step four.  Madden continued working for Windham through school year 1985-86, advancing one step for each year of service.

{¶ 48} Madden had not objected to her placement on the salary schedule up to that point.  Prior to filing her action in mandamus, however, Madden asked Windham to place her on the proper step for future employment, Windham refused.

{¶ 49} On July 17, 1986, Madden filed a complaint for a writ of mandamus in the Court of Appeals, Portage County.  She contended that she should have been placed at step four upon her return to Windham in school year 1979-80 instead of remaining at step three, the level where she was in school year 1970-71.  Madden also alleged that for school years 1979-80 through 1985-86, she incorrectly was placed one level lower where she should have been placed.  Madden asked the appellate court to compel Windham to compensate her at the appropriate step and to award damages to her for loss of salary caused by her incorrect placement on the salary schedule.  The appellate court granted the writ of mandamus, stating that Madden had a clear legal right to be placed at one step higher than she had been placed for school years 1980-81 through 1985-86.  Windham appealed as of right to the Supreme Court of Ohio.

{¶ 50} Affirming the judgment of the court of appeals, the Supreme Court of Ohio, in *Madden,* addressed the applicability of R.C. 2305.07's statute of limitations. The court explained:

> Respondent also contends that relator's action is barred by the statute of limitations. Respondent argues that her cause of action accrued in 1979 when the board initially withdrew the one-year credit for relator's substitute teaching experience and placed her at step three. Thus, according to respondent, relator's complaint, which was filed in 1986, was not timely filed within the six-year statute of limitations.
>
> The court of appeals correctly found that relator's cause of action was within the statute of limitations because each year constituted a separate claim. Thus, pursuant to *State, ex rel. Gingrich, v. Fairfield Cty. Bd. of Edn.* (1985), 18 Ohio St.3d 244, 18 OBR 300, 480 N.E.2d 485, the appellate court held that respondent must compensate relator for the six years prior to the filing of the complaint.
>
> In *Gingrich, supra,* we established that the six-year statute of limitations provision found in R.C. 2305.07 was applicable to claims for back compensation given for substitute teaching. Here, respondent erroneously placed relator one step lower on the salary schedule than it should have in 1979 and subsequent years. Thus each year's placement constitutes a separate and distinct claim. Pursuant to R.C. 2305.07, relator should be compensated for the six years prior to the filing of her complaint.

*Id.* at 90.

## The *N. Olmstead* Case

{¶ 51} In *N. Olmstead,* Richard A. Smith was a captain in the North Olmstead Fire Department and a member of the bargaining unit represented by North Olmstead Fire Fighters Association ("union").

{¶ 52} Smith joined the fire department as a full-time employee in August 1965. In July 1988, he asked the city of North Olmstead and its mayor ("city") to credit him with additional vacation leave in recognition of his prior service in the Ohio Air National Guard ("National Guard").

{¶ 53} Smith served on active and inactive duty in the national guard for approximately five years and nine months during 1957 through 1962. He claimed that his military duty entitled him to 15 weeks more vacation by operation of R.C. 9.44. The city disagreed and refused to reassess Smith's vacation leave. The parties agree that the collective bargaining agreement does not specifically cover vacation leave attributable to prior state service.

{¶ 54} In the Court of Appeals for Cuyahoga County, Smith and his union sought a writ of mandamus to order that the city of North Olmstead count Smith's national guard service in determining his vacation leave. They argued that R.C. 9.44 required recognition of all this service, regardless of whether Smith was on active or inactive duty. They also urged the appellate court not to apply laches or the six-year statute of limitations in R.C. 2305.07.

{¶ 55} The *N. Olmstead* court summarized the appellate court's decision on the statute of limitations and laches issues:

> With respect to R.C. 2305.07, the court of appeals held that "a new and distinct claim" arose each year Smith was not credited for his prior state service. The court, therefore, ordered that Smith's National Guard service be credited toward vacation leave only for the period commencing on December 18, 1983, six years before Smith filed his complaint for a writ of mandamus. The court also rejected North Olmsted's laches defense, holding that the city had not demonstrated material prejudice from Smith's delay in asserting his claim.

*Id.* at 531.

{¶ 56} On appeal as of right to the Supreme Court of Ohio, the *N. Olmstead* court succinctly sets forth the four issues before it and also succinctly states its holding as to those issues:

> This case presents the following questions for our review. First, is service in the National Guard prior state service for the purpose of R.C. 9.44? Second, does R.C. 9.44 impose a duty for North Olmsted to count Smith's five years and nine months of National Guard service as five years and nine months of full-time prior state service toward his vacation leave? Third, did the court of appeals err by applying the six-

year statute of limitations? Fourth, did the court of appeals err by rejecting laches as a defense?

For the reasons that follow, we hold that (1) National Guard service qualifies as prior state service under R.C. 9.44; (2) R.C. 9.44 requires a current public employer to treat qualifying prior state service as if it were service with that employer, such that the value of the service, if any, is determined by the current employer's vacation leave policy; (3) R.C. 2305.07 limits the actionability of R.C. 9.44 claims; and (4) North Olmsted did not prove Smith's delay caused the material prejudice required for laches to apply. Accordingly, we affirm in part and reverse in part the court of appeals' judgment. Moreover, because a material fact-the conditions under which North Olmsted fire fighters accrued vacation leave during the period Smith may be entitled to relief-has not been resolved, we remand this case for further proceedings.

*Id.* at 531-32.

{¶ 57} Regarding the statute of limitations issue, the *N. Olmstead* court explained:

Smith and his union argue that limiting the actionability of R.C. 9.44 claims to six years is unfair to public employees who may be unaware of the statute. The same argument could be made, however, to prevent the effect of any statute of limitations. Moreover, at least two other courts of appeals have already held R.C. 2305.07 applicable to employment disputes involving R.C. 9.44. * * * We see no reason why these holdings should not be followed.

The court of appeals relied on *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Edn.* (1989), 42 Ohio St.3d 86, 537 N.E.2d 646, to also hold that a new cause of action arose each year that North Olmsted failed to account for Smith's National Guard service in computing his vacation leave. In *Madden,* we allowed a writ of mandamus to place a teacher on sequentially higher steps in her salary schedule, but only for the six years preceding her complaint. We rejected the argument that the teacher's cause of action accrued when she was first placed on the wrong salary step seven years earlier and held that a "separate and distinct" claim arose each time the teacher was not placed at the right salary level. Id. at 90, 537 N.E.2d at 649.

Arguing that Smith's cause of action is now completely barred because it became actionable in 1970 when R.C. 9.44

was enacted, North Olmsted urges us to distinguish Madden on the ground that fire fighters are not on year-to-year contracts as was the teacher in that case. However, Smith appears to accrue vacation on an annual basis, which suggests that he, like the teacher in Madden, acquires a new cause of action each year.

*Id.* at 535.

### The Instant Case — Conclusion

{¶ 58} Here, relator's only cause of action accrued on May 4, 2007, the date that respondent revoked his unclassified appointment to the administrative officer 3 position. Relator does not claim that other causes of action arose after May 4, 2007. Nor does it appear from the record that any argument can be made that other causes of action arose after May 4, 2007.

{¶ 59} Thus, the instant case is distinguishable from the situation in the *Madden* case where it was found that "each year's placement constitutes a separate and distinct claim." *Madden* at 90.

{¶ 60} Also, the instant case is distinguishable from the situation in the *N. Olmstead* case where it was found that "Smith appears to accrue vacation on an annual basis, which suggests that he, like the teacher in *Madden,* acquires a new cause of action each year." *Id.* at 536.

{¶ 61} Thus, based on the above analysis of the *N. Olmstead* and *Madden* cases, relator is incorrect to argue that the R.C. 2305.07 statute of limitations permits recovery for the six-year period retrospective of the filing of his complaint here on November 18, 2013.

{¶ 62} Relator had only one cause of action arising from the May 4, 2007 revocation of his unclassified appointment to the administrative officer 3 position. That cause of action is now barred in its entirety by R.C. 2305.07.

{¶ 63} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).